JOHN R. BENSLEY ET AL.

v.

JOHN W. MOON.

</div>

CONTRACTS—AGENCY.—Appellee traded on the Board through appellants, as his brokers, giving his orders through one W. Being pressed by appellants for more margins, and making no reply, they by order of W. changed the deal from September to November oats, and then sold out at a loss, and brought suit against appellee to recover for such loss. The court is of opinion that the facts fail to show authority from appellee to W. to direct the change in the deal, and consequently appellee was not liable for the loss.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed August 5, 1880. Re-hearing denied October 6, 1880.

This was a suit in assumpsit, brought by the appellants, commission merchants, doing business on the Board of Trade of Chicago, against the appellee, a resident of Livingston county, Ill., to recover a balance claimed to be due them for commissions and for money expended by them in closing up and settling certain dealings on the Board of Trade, entered into by them for and on account of appellee. A trial was had in the court below without a jury, resulting in a finding and judgment in favor of the defendant.

The evidence shows that sometime in March, 1878, the defendant came to the office of the plaintiffs at Chicago, with a letter of introduction from one C. D. Withrow, of Cornell,

Livingston county, Ill., certifying to the defendant's entire responsibility, and the defendant thereupon told the plaintiffs that he wanted soon to buy some lard, and possibly some other property, and made arrangements with the plaintiffs to make the purchase for him, at the same time depositing with them $600 for margins. Defendant further stated that as he did not want what he was doing to become known, he would have said Withrow act for him.

About three weeks later, April 8, 1878, the plaintiffs received from Withrow a telegram directing them to purchase for the party who left margins five hundred tierces of June lard. On receipt of this telegram, plaintiffs purchased five hundred tierces of lard on the Board of Trade, deliverable in June, at a certain price, and advised both the defendant and Withrow of the purchase. The day following, defendant wrote the plaintiffs in reply, saying: "Yours of yesterday received. Will keep you advised in regard to my deal. Mr. Withrow telegraphed for me as I was in a hurry to go away. I think I have cheap property at price."

The market price of lard declining, plaintiffs wrote defendant several times, calling his attention to the condition of the market, and to the inadequacy of his margin, and requesting him to send additional margin. To this request defendant made no response. Plaintiffs held the lard until May 13, 1878, when the margin being exhausted, they sold it at the then market price, sustaining a loss of $560. This, with their commissions, $56.80, making $615.80, was charged to defendant's account. Both defendant and Withrow were advised of the sale on the day on which it was made.

On the next day, May 14, defendant came to plaintiffs, office and gave them a verbal order to buy for him seven hundred and fifty tierces of lard, and at the same time deposited with them $400, for which he was given credit on account. In compliance with this order, the plaintiffs, on the same day, bought for the account of the defendant five hundred tierces of July lard, and on the day following two hundred and fifty tierces more of August lard.

The market declining rapidly, and the defendant failing to

respond to the plaintiffs' request for further margins, made both by letter and telegraph, this lard also was sold May 18, at a loss of $400, which, with $81.75, plaintiff's commissions, was charged to defendant's account, and a statement of account rendered him.

On the 10th day of June, 1878, defendant again came to the plaintiff's office, accompanied by Withrow, and gave them a verbal order to purchase for him thirty thousand bushels of oats, and at the same time deposited with them $900, to be used as a margin on such purchase. To fill this order, plaintiffs, on the same day, and while appellee was still in their office purchased twenty thousand bushels of September oats, which purchase was immediately reported to defendant in person, and on the same or the next day, to complete the order, they purchased ten thousand bushels more of September oats. At the time of making the order, defendant told the plaintiffs that Withrow would give orders in relation to the transaction; and he further said that he did not wish the oats sold out; that he would hold them at all events, and that if more margin was needed, he would furnish it.

Sometime in August following, the condition of the market being such as to require further margin, plaintiffs wrote to defendant repeatedly, explaining the condition of the market, and requesting the remittance of an additional sum of money for margin, but received no reply. On the 10th of September, however, they received a telegram from Withrow, directing them to change defendant's oats into November, which was done on the same day by selling the September oats and purchasing in their stead a like quantity deliverable in November. The market still continuing to decline, they again wrote defendant repeatedly for more margin, but failing to obtain a response, they sold said oats in the market on the 19th and 20th of September at a large loss, which being charged to defendant's account, left him indebted to the plaintiffs in the sum of $696.95.

Evidence was offered tending to show that according to the uniform custom prevailing on the Board of Trade, contracts for the sale or purchase of property for future delivery are

made in the names of the commission merchants themselves, and not in the names of the parties on behalf of whom such purchases or sales are made; and that it is also the custom among the commission merchants to require their customers to deposit money as margins sufficient to protect the merchant against loss by reason of the rise or fall of the market, and that when the margin becomes insufficient, the merchant is at liberty, for his own protection, to close out the transaction by selling or buying in the property, as the case may be.

The evidence shows that at the time of the transactions in question, Withrow was a grain merchant, doing business at Cornell, and that sometime prior to the commencement of the dealings between the plaintiffs and defendant, an arrangement had been entered into between the plaintiffs and Withrow, by which the plaintiffs agreed to give Withrow one-half of their commissions on all business which he should bring to their office. In pursuance of this arrangement, Withrow was engaged to some extent in soliciting business for the plaintiffs, and, among others, he solicited the defendant to deal with them, and, as a result of such solicitation, the defendant came to the plaintiffs' office with Withrow's letter of introduction, and entered upon the course of dealings with them, out of which the indebtedness in question grew.

During the course of these dealings, many of the communications between the plaintiffs and defendant were made through Withrow, and the defendant on several occasions told the plaintiffs that Withrow would act for him in the business, and actually employed him in various matters connected therewith. Withrow, when examined as a witness, fails to recollect sending the telegram directing the change of the defendant's oats from September to November, but the evidence of both Withrow and the defendant is positive, that no authority was given by the defendant to Withrow to forward said telegram to the plaintiffs, and that such telegram, if sent at all, was sent without the defendant's authority or knowledge.

Messrs. NEEDHAM & MILLER, for appellants, that where a contract is entered into the parties are supposed to contract

with reference to the known usage and custom of the particular business, cited Home Ins. Co. v. Favorite, 46 Ill. 263; Lyon v. Culbertson, 83 Ill. 33; Bailey v. Bensley, 87 Ill. 559; Story on Agency, § 60; 1 Chitty on Contracts, 83; Sutton v. Taltram, 10 A. & E. 27; Bayliffe v. Butterworth, 1 Welsb. Hurl. & Gord. 428; U. S. Life Ins. Co. v. Advance Co. 80 Ill. 549; Oldershaw v. Knoles, 4 Bradwell, 63; Munn v. Burch, 25 Ill. 35.

Withrow was the agent of appellee, and appellants were justified in following his orders:   Lycoming Ins. Co. v. Rubin, 79 Ill. 402.

Contracts for future delivery of grain are not gambling contracts: Sanborn v. Benedict, 78 Ill. 309; Pixley v. Boyington, 79 Ill. 351; Pickering v. Cease, 79 Ill. 328; Logan v. Musick, 81 Ill. 415; Corbett v. Underwood, 83 Ill. 324; Wolcott v. Heath, 78 Ill. 433; Cole v. Milmine, 88 Ill. 349; Clark v. Foss, 10 Chicago Legal News, 211; Hibblewhite v. McMorine, 5 Mers. & W. 462; Kirkpatrick v. Bonsall, 72 Pa. St. 155.

Mr. E. F. BULL, for appellee; that the transaction was a gaming contract, cited Lyon v. Culbertson, 83 Ill. 33; Pickering v. Cease, 79 Ill. 328.

The true, illegal character of the contract may be shown: Walker v. Johnson, 2 Cranch, 203; Derney v. Elkins, 4 Cranch, 161; Stacker v. Watson, 1 Scam. 207; Armstrong v. Toler, 11 Wheat. 158; Hanauer v. Doane, 12 Wall. 342; Bruas's App. 55 Pa. 294; Kirkpatrick v. Bonsall, 72 Pa. 155; Brown v. Phelps, 103 Mass. 313; Stebbins v. Leowolf, 3 Cush. 137; Ward v. Vanduzen, 2 Hall, 162; Ladds v. Dillingham, 3 Me. 316; Scott v. Gilmore, 3 Farmton, 226; Cosard v. Hinman, 1 Bos. 207; Griswood v. Blaine, 73 E. C. L. 538; Story's Agency, § 346; Addison on Contracts, 209; Butchers v. Kranch, 14 Ky. 713.

Appellants cannot recover for money advanced in furtherance of a known illegal transaction: Story on Agency, § 346; Steers v. Larbly, 6 Tenn. R. 61; *Ex parte* Mather, 3 Ves. 373; Brown v. Turner, 7 Tenn. R. 630; Mitchell v. Cockburn, 2 H. Black. 380; Aubert v. Maize, 2 B. & P. 371; Armstrong v.

Toler, 11 Wheat. 258; *Ex parte* Bell, 1 M. & S. 594; Lough-ton v. Hughes, 1 M. & S. 594; Benjamin on Sales, § 508.

The factor is not liable to his principal for the failure of the party with whom he contracts if he has used due care in making the contract: Foster v. Waller, 75 Ill. 464; Deshler v. Beers, 32 Ill. 368; Phillips v. Moir, 69 Ill. 155.

Usages of trade cannot be set up to contravene an established rule of law: Lonergan v. Stewart, 55 Ill. 44; Wilson v. Bauman, 80 Ill. 493; Burton v. Goodspeed, 69 Ill. 237.

BAILEY, J.    Several questions are elaborately argued by counsel, but as we view the case, it will be necessary for us to consider but one.  If the plaintiffs are entitled to recover at all, their right must depend, among other questions, upon whether they were justified in selling the defendant's oats on the 10th of September, when they made sale for the purpose of changing the contract which they had made for the defendant, from one calling for oats deliverable in September to one calling for oats deliverable in November.  At that time, as the evidence shows, the defendant's margin was entirely exhausted, and the defendant, although applied to for that purpose, had neglected to furnish the margin which the plaintiffs were entitled to demand.    Under the custom prevailing among commission merchants, the plaintiffs at that time, doubtless, had an option to close out the transaction, by going upon the market and selling the defendant's oats at the then market price. They did not seek, however, to avail themselves of that option, but merely sold for the purpose of changing the defendant's deal from September to November oats.    Unless they had authority to make this change, their act in so doing was wrongful, and finds no warrant either in the custom proved, or in any general principle of law; and if wrongful, they could not afterwards, by selling out the November oats, lay the foundation for an action against the defendant.

Had they authority, then, to make the change?  It is not pretended that such authority was derived directly from the defendant, and the only warrant for the act claimed by the plaintiffs is the telegram from Withrow.    The evidence is clear

Bensley v. Moon.

that Withrow had no express authority to send the telegram, and the only question is, whether such authority can be implied.

Had no relation of principal and agent subsisted between Withrow and the plaintiffs, this question might easily be answered in the affirmative. In that case the defendant's statements from time to time, as well as his frequent recognitions of Withrow's agency, would be quite sufficient to raise an implication of authority to send the telegram. But Withrow was the plaintiffs' agent in respect to this very matter, and as such, entitled to compensation from them for his services. Not only were the dealings commenced at his solicitation, but the evidence shows that each successive step therein was entered upon by the defendant very largely as the result of Withrow's persuasions. That no man can serve two masters, is a principle recognized both by law and good morals. Withrow could not act as the agent of both the plaintiffs and defendant. Doubtless, had the defendant expressly requested Withrow to write or telegraph the plaintiffs to change his deal from September to November oats, and Withrow had done so, the defendant would have been bound. Giving the direction to Withrow would have been tantamount to giving it to the plaintiffs. But the plaintiffs had no right to rely upon any implication of authority to their own agent to act at the same time as the agent of the other party with whom they were dealing.

It follows that the sale of September 10 was without authority, and the purchase of the November oats was equally unauthorized. The plaintiffs, then, cannot charge against the defendant the losses resulting from those transactions, and eliminating those charges from the account, it does not appear that anything is due from the defendant to them. In the view of the case we have thus taken, the judgment of the court is warranted by the evidence, and it will accordingly be affirmed.

Judgment affirmed.